363 So.2d 603 (1978)
MIAMI HERALD PUBLISHING COMPANY, a Division of Knight-Ridder Newspapers, Inc., D/B/a the Miami Herald and Palm Beach Newspapers, Inc., D/B/a the Palm Beach Post, Appellants,
v.
STATE of Florida and Peter Joseph Salerno, Appellees.
No. 77-2530.
District Court of Appeal of Florida, Fourth District.
October 25, 1978.
*604 Talbot D'Alemberte and Donald M. Middlebrooks of Steel, Hector & Davis, Miami, for appellant  Miami Herald Publishing Co.
Florence B. Snyder, Boca Raton, for appellant  Palm Beach Newspapers, Inc.
James D. Spaniolo, Miami, Staff Counsel for appellant  Miami Herald Publishing Co.
Robert L. Shevin, Atty. Gen., Tallahassee, James D. Whisenand, Deputy Atty. Gen., and Douglas C. Kearney, Asst. Atty. Gen., Tallahassee, for appellee  State of Florida.
Philip G. Butler, Jr. of Foley, Colton & Butler, P.A., West Palm Beach, for appellee  Peter Joseph Salerno.
LETTS, Judge.
Two major newspaper chains here appeal a trial Judge's decision which excluded the media from a sentencing hearing and thereafter sealed the record thereof.
We affirm but also remand.
In the case at bar Salerno, a jewel thief internationally known to the authorities, was convicted of burglary and grand larceny charges. Some eleven months later at the request of defense counsel and with the acquiescence of the State, the trial judge, without warning, cleared the courtroom and conducted a two hour closed sentencing hearing. The press was only allowed to return to hear the sentence pronounced  15 years probation. A court reporter was in attendance at the hearing and a complete transcript was prepared and sealed. Subsequently, the appellant newspapers filed a motion to intervene and a motion to vacate the order sealing the transcript. The motion to intervene was granted, the trial court recognizing the newspapers' standing to question the orders in issue. The motion to vacate was denied after a hearing in a written order which stated in part:
The Court finds that in the present case there are substantial compelling and cogent reasons existing that require that the record of the sentencing proceedings be sealed and remained sealed, at least for the time being. However, as discussed in News-Press Pub. Company, Inc. v. State, [345 So.2d 865] supra, at page 867, a specific and thorough statement of these reasons would subvert the Court's purpose in sealing the sentencing proceedings. For this reason the Court is unable *605 to state with specificity the nature of the existing reasons that require nondisclosure of the sentencing proceedings in the present case.
During the pendency of the present case the Court has received information from counsel for the State of Florida and the Defendant. In addition the Court has received information from other individuals with the full knowledge and acquiescence of counsel for the State of Florida and the Defendant. Based on this information, which the Court is not at liberty to disclose at the present time, the Court feels that the personal safety of one or more individuals whose identity or identities are known to the Court but cannot be disclosed, would be severely jeopardized if the contents of the record of the sentencing proceedings were revealed at the present time. For this reason, it is hereby,
ORDERED AND ADJUDGED: That the records of the sentencing proceedings in the present case should be sealed and remained sealed until further order of the Court. Further, counsel for the State of Florida and the Defendant are hereby ordered to advise the Court of any pertinent developments that would remove the present reasons that exist for sealing the records in order that the Court may properly disclose the contents of the record at some appropriate future time. Further, the Court advises all parties that the sentence proceedings have been transcribed and are currently sealed and in the custody of the Court. The transcript is available for an "in camera" inspection by an Appellate Court to permit review of the present Order upon proper order from the Appellant Court.
This appeal followed.
According to the appellants, this judicial action "touched off a storm of controversy in Palm Beach County" and "as a direct result of the court's order, the climate of public opinion surrounding this case reflects distrust for the integrity of the judicial process." From the record provided to us, the only evidence of such a happening consists of grumbling on the part of two police officers, one of whom added that he trusted the judge to be fair and honest. Thus, any outrage was not expressed by members of the public as such, but by the media. Nevertheless we recognize that the opinions of the press are, in truth, a form of public expression because the media acts as the public's primary agent. This agency was succinctly expressed by Judge Hendry in Miami Herald Publishing Company v. Collazo, 329 So.2d 333 (Fla. 3d DCA 1976):
An informed public depends on accurate and effective reporting by the news media. No individual can obtain for himself the information needed for the intelligent discharge of his political responsibilities. For most citizens the prospect of personal familiarity with newsworthy events is hopelessly unrealistic. In seeking out the news the press, therefore, acts as an agent of the public at large. It is one of the primary means by which we receive that free flow of information and ideas essential to intelligent self-government. The underlying right to know is the right of the public generally. See Saxbe v. Washington Post Co., 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974); and Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966).
We first hold that the public's right to be informed continues beyond the trial itself and also applies to sentencing proceedings. We find no supporting case on this precise point, but confidently base our conclusion on the premise that "what transpires in the court room is public property." Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947). It is true that, within the parameters of his discretion, a trial judge can pass whatever sentence he chooses, without the need to explain it, either to the press, or to us. However, if the pronouncement is based on any tangible proceeding or document presented in the courtroom, it is within the public domain unless covered by some designated exception.
Much is argued about whether these proceedings should have been opened or *606 closed, yet the newspapers contend that that single issue is not really dispositive and state in their reply brief:
But appellants have not argued, as the State seems to suggest, that courts are without power to issue closure orders in all cases. The appellants do contend, however, that constitutional values are involved and such orders cannot be entered absent a showing that (1) closure is necessary to prevent a serious and imminent threat to the administration of justice, (2) that no less restrictive alternative measures are available, and (3) that closure will in fact achieve the Court's purpose.
We agree with the newspapers in all three respects.
In the case at bar, the trial court quite properly cited News-Press Pub. Co., Inc. v. State, 345 So.2d 865 (Fla. 2d DCA 1977) as a reference for its authority to seal the transcript. As was said in the News-Press case:
By virtue of its inherent power to control the conduct of its own proceedings, there is little doubt that under certain circumstances the courts may exclude the public and the press from its proceedings, but such authority must be cautiously exercised. State ex rel. Gore Newspapers Company v. Tyson, 313 So.2d 777 (Fla. 4th DCA 1975). As applied to the instant case, a showing that the opening of the depositions might endanger a person's life could well justify the order entered below. On the other hand, an understandable desire to protect the victim's family from exposure of the details of what was apparently a heinous crime would not warrant an order which would preclude public access to official court records in the form of these depositions. The press must be counted on to report such facts in a responsible manner. The desirability of press access to criminal proceedings was emphasized in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), when the U.S. Supreme Court said:
"... A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism...."
There must be some compelling reasons before some or all of the records of a court proceeding may be sealed. Moreover, these reasons should be specifically set forth by the sealing authority in order that the legality thereof can be reviewed. The basis for closing the records can be sufficiently stated without divulging the information sought to be protected. If the reasons given for sealing the records are deemed to be facially sufficient but their application to the records under consideration is questioned, the reviewing court may always exercise an in camera inspection of the records to see if the reasons given by the sealing authority are borne out. (Id. at 867 emphasis supplied)
The trial court specifically stated that the personal safety of one or more individuals would be severely jeopardized if the contents of the transcript were disclosed. These reasons for sealing the record, at the actual time it was done, are borne out by this court's examination of the sealed, sworn to[1], transcript.
But, as noted above, the appellants do not claim that there are no instances in which records may be sealed or hearings closed. Rather, they correctly claim that the trial court erred in the procedure followed. As was said by our Supreme Court in State ex rel. Miami Herald Pub. v. McIntosh, 340 So.2d 904 (Fla. 1977):
Although freedom of the press belongs to all the people those who gather and distribute *607 news have special concerns which entitle them to notice and a hearing BEFORE any trial court enjoins or limits publication of court proceedings. The circumstances may require a summary hearing but reasonable notice under prevailing conditions and a hearing must be had in each instance. (Id. at 910, emphasis supplied)
In the case now before us, Judge Stewart did it backwards and held his secret proceeding first, then later held a hearing to receive the protests of the media and its demand that the record be unsealed. This was improper. True, the McIntosh case involved a gag order (prior restraint) rather than a sealing of the record, but, so far as the media is concerned, the distinction is one of form rather than of substance, inasmuch as the end result in both cases is a withholding of the publication of court proceedings. We are of the opinion that the error was cured by the later hearing held, but the McIntosh language says nothing about such a "seal now and explain it later" approach. Nonetheless we are of the opinion that a later hearing sufficed[2] because we see no prejudice to the media. Had the hearing been held first, the press could have argued no more than it subsequently did because either way it knew no facts to argue and could only make blind assertions. Herein lies the ultimate distinction between a McIntosh gag rule situation and the one before us now, for the media is at an unfair disadvantage in the latter. At any hearing, such as was held here, the proponents of the closing can argue that there exist cogent and compelling reasons for the closing in the form of imminent personal peril. The media is thereupon reduced to responding that there are not, without any actual knowledge of that which it asserts. We find this unfair to the media yet can offer no cure at the trial level, short of requiring an open rather than a closed hearing and allowing the entering of a subsequent gag order if deemed necessary. Such a solution might be workable, but we cannot implement it at this level. The latest Supreme Court rule on the subject [Fla.App.R. 9.100(d)] specifically envisages proceedings from which the press is excluded. Such would certainly pre-empt us from a major departure from this concept under which we would prefer to include the press at all hearings and then "gag" them if required.
In the meantime the media is not without its remedy for the new rules and the McIntosh case has supplied it with standing to appeal all trial court rulings inhibiting dissemination of the news, in the very manner here employed.
As we have already said, we agree from our reading of the sealed record, that there were cogent and compelling reasons to support Judge Stewart's decision to seal it (at any rate at the time he did so) and there was, at that moment, imminent personal peril to the lives and safety of witnesses. McIntosh, supra. News-Press, supra. This being so, we must continue to withhold the publication of this record, subject to the provisions of this opinion hereinafter set forth.
Pursuant thereto we note that Judge Stewart's order provided in part that "... counsel for the State of Florida and the Defendant are hereby ordered to advise the Court of any pertinent developments that would remove the present reasons that exist for sealing the records in order that the Court may properly disclose the contents of the record at some appropriate future time." Relative to this, we also note, a subsequent sealed motion and resulting order dated 16th December 1977 which appears to us to "remove the present reasons" for sealing the record. We, therefore, remand this case to the trial court to consider:[3]
1. Whether the events contemplated in said December order have come to pass and if they have, why cannot the record be unsealed.

*608 2. Whether it is necessary to seal all of the record of the hearing even if it continues to be necessary to seal a part of it.
3. The length of time that the record must continue to be sealed if such is still necessary.
4. Whether there are alternatives other than sealing the record.
Accordingly, we remand this cause for a further hearing in accordance herewith, which may be closed. However, any order resulting therefrom must either set forth express findings in accordance with our four directions, or alternatively open the record.
AFFIRMED AND REMANDED.
DOWNEY, C.J., and ANSTEAD, J., concur.
NOTES
[1] One of the appellant's concerns is that it has no knowledge on whether the information reviewed by the court was under oath. It was.
[2] Notwithstanding this conclusion, we approve this procedural defect in this case only and our ruling should not be used as precedent for the future.
[3] These 4 considerations are either directly discussed or alluded to in the McIntosh case supra.