388 So.2d 1367 (1980)
OCALA STAR BANNER CORPORATION; and Sentinel Star Company, Petitioners,
v.
The Honorable Wallace E. STURGIS, Raymond Ellis Taylor; and the State of Florida, Respondents.
No. 80-1075.
District Court of Appeal of Florida, Fifth District.
October 15, 1980.
Sanford L. Bohrer and Richard L. Ovelmen, of Paul & Thomson, Miami, for petitioners.
William G. Mateer and David L. Evans, of Mateer, Harbert, Bechtel & Phalin, P.A., Orlando, for petitioner Sentinel Star Co.
*1368 Gregory E. Tucci, of Walkup, Berk & Tucci, Ocala, for respondent Taylor.
Jim Smith, Atty. Gen., Tallahassee, and Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, for respondents.
ORFINGER, Judge.
Respondent Taylor, approximately six weeks before the commencement of his trial in Marion County on a charge of first degree murder, filed a motion in the trial court to control pre-trial publicity. The motion alleged, in substance, that respondent was charged with the murder of a prominent citizen of Levy County, Florida and the aggravated battery of another prominent citizen of that same county; that subsequent to respondent's arrest, eighteen news articles had appeared in the Ocala Star Banner, copies of which were attached, and in addition, other newspapers serving Marion County had also carried newspaper accounts of pre-trial activity in this case. It alleged that Marion County had a relatively small population, that the newspapers had large circulations, and that the effect of these articles had been to saturate the community with such unfavorable publicity as to potentially deprive the defendant of the opportunity of receiving a fair trial in Marion County. He therefore requested that all further proceedings be held in camera, rather than in open court. The motion was served upon the State Attorney's Office, but was not served on any member of the news media. By an amendment to the motion, served in the same fashion, respondent Taylor also requested the sealing of the court file.
The case was set for trial September 22, 1980. On August 22, 1980, a hearing was held before the trial court on respondent's motion to close the proceedings. The record reflects that the State and the defendant were represented by counsel and that "also present at the hearing was Mr. Phil Bond, a local newspaper reporter." The record reflects discussion between defense counsel and the court, but there was no evidence or testimony presented. The State neither consented to nor opposed the motion.
At the conclusion of the hearing, the court entered an order, without any evidentiary basis, finding among other things that there had been widespread publicity in numerous newspapers circulated in Marion County; "that the effect of such publicity, if continued unrestrained, would likely cause bias and prejudice in the minds of prospective jurors who have been exposed to alleged facts and circumstances reported thereby, and would result in the disqualification of such prospective jurors because of formulated opinions or knowledge of such alleged facts and circumstances to the extent that they would have predetermined opinions as to the guilt or innocence of the defendant or knowledge of evidence which may or may not be presented at trial bearing upon the issue."
He further found, without an evidentiary basis, that continued availability of the public and press to the court files, discovery depositions and hearings before the court upon evidentiary matters constitutes an immediate threat to the administration of justice; that no less restrictive alternative measures were available to prevent pre-trial publicity and that the sealing of the court records, including depositions and other matters incident to pre-trial preparation, will achieve the court's purpose of avoiding the dissemination of information available to the jury venire that would substantially affect the selection of a fair and impartial jury.
Based upon the above findings, the court entered an order, which in substance closed the entire case and sealed the court file.[1] It should be noted that apparently the State had perpetuated the testimony of certain *1369 witnesses and had video taped the proceedings, and the video tapes were also sealed along with the court file. The order set a further hearing for August 27, 1980, at which time any member of the public or news media would have opportunity to show why the order should not remain in force and effect.
Both petitioners herein filed individual motions to set aside the order, and after hearing from the petitioners at the appointed time, the trial court entered a second order on August 29, 1980 denying the motions to vacate or modify and leaving the first order in full force and effect. On September 12, 1980, petitioners filed a motion pursuant to Rule 9.110(d), Florida Rules of Appellate Procedure, requesting that we review the closure orders, and further asking us to stay proceedings in the criminal trial pending our determination.
Because the petition was filed so close to the time of trial, we requested immediate responses from the respondents, and we set the matter for oral argument on September 19, 1980. At that hearing, the petitioners conceded that these proceedings should not interfere with the respondent Taylor's right to a speedy trial and they withdrew their request for a stay.
Although the trial of this cause has already commenced so that it might be said that these issues are moot, nevertheless we have retained jurisdiction because the underlying dispute is one capable of repetition, yet evading review. Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).
Much has already been written about the clash between an accused's Sixth Amendment rights to a fair trial and the First Amendment rights of the press to report criminal proceedings,[2] and much of what has been written seems to confuse the issue, rather than to clarify it. Much of the confusion revolves about the apparent differences between prior restraint cases such as Nebraska Press, and cases denying access to hearings or files, such as the case sub judice, and the uncertainty as to the application of the rules enunciated in the one type of case to the other.
What our Supreme Court said in State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1977) is applicable here, although McIntosh was a prior restraint case.
While a court is legitimately concerned with preventing prejudicial publicity from poisoning the impartial atmosphere essential to a fair trial, the court's action in restricting the media must relate to the danger sought to be avoided and it must not be unconstitutionally overbroad. Id. at 908.
We believe the order entered here, without any evidentiary basis, is overbroad, particularly as it applies in advance to court hearings, since there was no attempt made to distinguish between different types of hearings and it was not shown that access of the press (and consequently the public) to every pre-trial hearing would necessarily deprive the defendant of a fair trial. In a criminal proceeding, it is not the province of the court to control publicity as such, but only to control prejudicial publicity such as will deny a defendant his right to a fair trial. Therefore, if denial of access is proper, there must be some selectivity.
What test does the trial court apply to determine which proceedings should be closed to avoid such prejudicial publicity as will taint the public mind and deprive defendant of the opportunity to select an impartial jury?
In McIntosh, the Supreme Court held that to justify a prior restraint order, the *1370 activity restrained must constitute an immediate threat to the administration of justice and such order would not be upheld unless no reasonable alternatives are available. Although specifically addressing the issue of prior restraint, the Supreme Court did discuss the issue of access of the press to judicial proceedings when it said that
... the public and press have a right to know what goes on in a courtroom whether the proceeding be criminal or civil. A member of the press or newspaper corporation may be properly considered as a representative of the public insofar as enforcement of public right of access to the court is concerned; and the public and press have a fundamental right of access to all judicial proceedings. In determining restrictions to be placed upon access to judicial proceedings, the court must balance the rights and interest of the parties to litigation with those of the public and press. Id. at 908. (Emphasis supplied).
The district courts which have addressed the access or closure issues have adopted the McIntosh test, now referred to as a three-prong test, and have held that closure orders cannot be entered absent a showing that: (1) Closure is necessary to prevent a serious and imminent threat to the administration of justice, (2) that no less restrictive alternative is available, and (3) that closure will in fact achieve the court's purpose. Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978.)[3]
Petitioners take the position that we rejected the 3-part test as applied to closure orders in Sentinel Star Company v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980), but a careful review of that opinion does not justify that assertion. Edwards was a civil case, not a criminal case, and dealt with possible misconduct in jury deliberations which in and of themselves are closed proceedings. In Edwards, we did not reject the three-prong test of Booth, but pointed out that:
The Booth case, attempting to follow McIntosh and Nebraska Press erroneously applied a "three-prong" prior restraint analysis to a situation wherein a court file was sealed... . Insofar as the "three-prong" test referred to in Booth is applicable to prior restraint cases, it is not affected by Gannett.

We have before us now a criminal case where it is alleged that the First Amendment rights of the press clash with the Sixth Amendment rights of the defendant to a fair trial by an impartial jury,[4] and so we must reconcile those rights in a context not present in Edwards.
It is well settled in this state that a trial court in the exercise of its inherent power to control the conduct of its own proceedings, may exclude the public and the press from its proceedings, although that power should be exercised cautiously and in the exercise of sound judicial discretion. Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978); News Press Publishing Company v. State, 345 So.2d 865 (Fla.2d DCA 1977). However, trial courts need to have uniform standards against which this judicial discretion may *1371 be measured, so that to the extent possible, similar situations will produce similar results. The other district courts which have considered the issue have applied the three-prong test to denial of access cases, and although as pointed out in Edwards, this test was spawned in prior restraint cases, it appears to be a reasonable test to apply to access cases as well.
Prior restraint orders are acknowledged censorship orders. The press is permitted to gather the information, but is not allowed to print it. Limitation of access is likewise a form of censorship because the press is denied the right to gather the news, thus unable to print it. Although there is a distinction between the two types of orders, it appears to us to be a distinction without a difference. Under either order, the information is kept from the public and censorship results.[5] Under these circumstances, we see no reason to adopt a different type of test in access cases. Here, the trial court made the findings, but we see nothing in the record to support these findings.
We must insert a caveat. Our system of justice cannot accommodate a clash between an irresistable force and an immovable object. Where two constitutional rights clash, as they do here,
... the trial judge walks a tight wire in resolving the constitutional conflict. The right of the news media and the public to know all that transpires in a criminal case (beyond their unchallenged right to observe all proceedings in open court) must be carefully weighed against the defendant's right to a fair trial, but the defendant's right to a fair trial should be given paramount consideration. This should be with the realization, of course, that denial of access by the press to all or part of the criminal case file is not forever and should be terminated when the necessity for such denial has ceased to exist.
State ex rel. Tallahassee Democrat v. Cooksey, Fla.App., 371 So.2d 207 at 209.[6]
These questions remain: (1) whether the right of access to judicial proceedings includes the right of the press to attend the taking of either a discovery deposition under Florida Rules of Criminal Procedure 3.220(d) or a deposition taken to perpetuate testimony under 3.190(j), and (2) after such deposition is taken and transcribed does the press have access to the transcript of such testimony or to the video tapes if there are such.
In Tallahassee Democrat, Inc., v. Willis, 370 So.2d 867 (Fla. 1st DCA 1979), the court held that a deposition was "published" when the transcript thereof was filed with the clerk, and that it was thereupon open for public inspection unless the court entered a protective order under Florida Rules of Civil Procedure 1.280(c) requiring the deposition to be sealed. As further pointed out there, the taking of a deposition itself can hardly be categorized as a "judicial proceeding" for the simple reason that no judge is present, and no rulings or adjudications of any sort are made by judicial authority. Additionally, Rule 1.280(c) gives the court the power to determine "... (5) that discovery be conducted with no one present except persons designated by the court."
We therefore conclude that the press does not have the absolute right to attend the taking of a deposition, that its presence may be regulated by the court under Rule 1.280(c), but that once the deposition is taken, transcribed and filed in the court file, there is a right of access to it unless a protective order is entered by the court under the said rule.
During the hearing held in this case, the trial judge remarked that he was concerned about the safety of the witnesses whose testimony had been taken, and for that reason was sealing their depositions. A showing that the opening of a deposition might endanger a person's life could well *1372 justify the order below, News Press Publishing Company, Inc., v. State, supra, but we are not persuaded that the trial court was aware of the contents of the depositions when he sealed them. Instead, he seemed more concerned about the disclosure of the identity of the witnesses, and this concern might or might not be a proper basis for closure.
... There must be compelling reasons before some or all of the records of a court proceeding may be sealed. Moreover, these reasons should be specifically set forth by the sealing authority in order that the legality thereof can be reviewed. The basis for closing the records can be sufficiently stated without divulging the information sought to be protected. If the reasons given for sealing the records are deemed to be facially sufficient but their application to the records under consideration is questioned, the reviewing court may always exercise an in camera inspection of the records to see if the reasons given by the sealing authority are borne out.
News-Press, at 867.
Because of the importance of the questions raised here and their obviously recurring nature, we hereby certify to the Supreme Court of Florida the following questions arising from the order of the trial court and this opinion, which we believe require immediate resolution by that court and which are of great public importance and have a great effect on the proper administration of justice:
(1) Is the three-prong test espoused in Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978) and Sentinel Star Company v. Booth, 372 So.2d 100 (Fla.2d DCA 1979) properly applied to an order denying access to pre-trial criminal proceedings as opposed to a "gag" or prior restraint order?
(2) In a criminal case, does the media have a First Amendment right to attend the taking of either a discovery deposition or a deposition taken to perpetuate testimony, or otherwise have access to such proceedings prior to the filing of a transcript of such testimony with the Clerk of the Court?
In entering the order below, the trial court did not address the individual depositions or proceedings, but instead entered a blanket order which we have held to be overbroad. We therefore quash the order and remand the cause. Further closure orders should address a specific proceeding or deposition and should state with particularity the reasons for compelling closure. Sentinel Star Company v. Booth, supra.
Order QUASHED; cause REMANDED.
FRANK D. UPCHURCH, Jr. and SHARP, JJ., concur.
NOTES
[1] In reviewing this order we assume, for the purpose of this discussion, that the court did not intend to seal the trial, although the order did not so specify, but provided that it would remain in force and effect until further modification by written order of the court.
[2] Although not specifically so holding, the import of the decision in Richmond Newspapers, Inc. v. Virginia, ___ U.S. ___, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), seems to be that there is a First Amendment right of access to pre-trial criminal proceedings, as well as to the criminal trial itself. Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) had avoided a ruling based on first amendment rights.
[3] The same rule was followed in State ex rel. Pensacola News Journal v. Fleet, 388 So.2d 1106, (Fla. 1st DCA 1980); Sentinel Star Company v. Booth, 372 So.2d 100 (Fla.2d DCA 1979). Although not addressing the specific issue, a similar result was reached in Miami Herald Publishing Company v. Collazo, 329 So.2d 333 (Fla.3d DCA 1976), cert. den. 342 So.2d 1100 (Fla. 1976), a civil case. Other states have adopted the same rule in closure cases, e.g., State of New Jersey v. Hannah, 171 N.J. Super. 325, 408 A.2d 1349 (Sup.Ct. of N.J., App.Div. 1979), where the court also overturned an overbroad order, commenting that "... there are surely many pre-trial proceedings which could be conducted in open court without harm to the defendant's right to a fair trial."
[4] The Sixth Amendment to the U.S. Constitution applies to criminal cases.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed... ."
[5] See also, Miami Herald Publishing Co. v. State, supra.
[6] See also, State ex rel. Miami Publishing Company v. McIntosh, supra, at 909.