## STATE OF FLORIDA v. MOORE
### No. 82-15295 D
Thirteenth Judicial Circuit, Hillsborough County
March 9, 1983

Steven Yerrid, Holland and Knight, for *Tampa Tribune.*

Bruce Cury, Office of the Public Defender for *defendant.*

Mark Ober, State Attorney's Office, for plaintiff.

Henry Lavandera, */amicus curiae* for Criminal Defense Lawyers of Hillsborough County, Inc.

F. DENNIS ALVAREZ, Circuit Judge

THIS CAUSE, having come to be heard upon the Motion to Intervene filed on behalf of The Tampa Tribune, and the Court having heard argument of counsel for the parties to wit: The Tampa Tribune, Public Defender, State's Attorney, and amicus curiae by the Hillsborough County Criminal Defense Attorneys Association, and being otherwise fully advised in the premises, the Court hereby enters the following decision:

### FACTS

The Tampa Tribune filed a Motion to Intervene in the above styled cause which involves a criminal proceeding wherein KEVIN PRESTON MOORE, a fourteen (14) year old teenager is accused of killing an eleven (11) year old neighbor. The defendant who is being represented by the Public Defender's Office was indicted on December 29, 1982. Subsequent to the indictment, the Public Defender scheduled for deposition, two (2) Tampa police officers who may have elicited statements from the defendant. A reporter for The Tampa Tribune attempted to be present during the taking of said depositions but was prevented when the depositions were cancelled. They were rescheduled, without the filing of notices in the court file. This action prompted The Tampa

Tribune to file its Motion to Intervene in Opposition to the Closure of Deposition Porceedings.

## DISCUSSION OF APPLICABLE LAW

### A) RIGHT OF ACCESS TO CRIMINAL PROCEEDINGS

The Tampa Tribune filed a memorandum in Opposition to the Closure of Deposition Proceedings. The Public Defender, State's Attorney and Defense Bar filed no memorandum but were given the opportunity to argue their positions in response to the Tampa Tribune on March 4, 1983.

In *State ex rel. Miami Herald Publishing Co. v. McIntosh,* 340 So. 2d 904 (Fla. 1977), the Florida Supreme Court held that the public should generally have unrestricted access to all *judicial proceedings,* and that the news media, even though not a party to the litigation, has standing to question the validity of an order restricting the publicity because its ability to gather news is directly impaired or curtailed.

The *Court* at pate 910, stated . . .

> "Freedom of the press is not, and has never been a private property right granted to those who own the news media. It is a cherished and almost sacred right of each citizen to be informed about current events on a timely basis so each can exercise his discretion in determining the destiny and security of himself, other people, and the nation. News delayed is news denied. To be useful to the public, news events must be reported when they occur. Whatever happens in any courtroom directly or indirectly affects all the public. To prevent star-chambers injustice, the public should generally have unrestricted access to all proceedings."

Two recent United States Supreme Court decisions that are pertinent to the present issue are *Gannett Co. v. DePasquale,* 443 U.S. 368 (1979) and *Richmond Newspapers, Inc., v. Virginia,* 448 U.S. '555 (1980). In *Gannett,* defense attorneys moved to close a *pre-trial suppression hearing* to the press and public. The United States Supreme Court considered the access issue. As to the Sixth Amendment, the Court held, at page 390, that . . .

> "Members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend criminal trials."

The Court concluded that the Constitution affords no affirmative right of access to the pre-trial suppression hearing at issue. The *Richmond*

*Newspapers* case involved the closure of an entire trial. *Gannett* was distinquished in *Richmond Newspapers,* on page 564, as follows. . . .

"In *Gannett* . . . the Court was not required to decide whether a right of access to trials, as distinquished from hearings or pretrial motions was constitutionally guaranteed. The Court held that the Sixth Amendment's guarantee to the accused of a public trial gave neither the public nor the press an enforceable right of access to a pretrial suppression hearing."

In *Miami Herald Publishing Co., et al. v. Lewis,* 7F.L.W. 385 (September 3, 1982), the Florida Supreme Court stated at page 387, the following . . . .

"The specific holding in *Richmond Newspapers* is that the right to attend criminal trials is implicit in the guarantees of the First Amendment."

Justice Adkins speaking for the majority in *Miami Herald Publishing Co. V. Lewis,* supra at page 387,

"Public access to the Courts is an important part of the criminal justice system, as it promotes free discussion of governmental affairs by imparting a more complete understanding to the public of the judicial system. *Mills v. Alabama,* 384 U.S. 214 (1966). Such access gives the assurance that the proceedings were conducted fairly to all concerned. *Richmond Newspapers,* Aside from any beneficial consequences which flow from having open courts, the people have a right to know what occurs in the courts. The Supreme Court of the United States has noted repeatedly that a trial is a public event. What transpires in the courtroom is public property. *Craig v. Harney,* 331 U.S. 367 (1947). Public access also serves as a check on corrupt practices by exposing the judicial process to public scrutiny. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 529 (1976), and protects the rights of the accused to a fair trial. Finally, because participating lawyers, witnesses, and judges know their conduct will be subject to public scrutiny, it is fair to conclude that they will be more conscientious in the performance of their roles."

In *U.S. v. Criden,* 675 F. 2d 550 (3rd Cir. 1982), the Court of Appeals held that the public has a First Amendment right of access to *pre-trial suppression, due process,* and *entrapment hearings.* The Court further states that the same societal interest and structural arguments that mandated a First Amendment right of access to criminal trials in *Richmond Newspapers* applies with equal force to pretrial criminal proceedings. The public has the same First Amendment right of access

"to information about how one of the three great political branches of our government conducts its business." The six societal interests found to be mandated by the *Richmond Newspaper* court are found at page 556, as follows . . .

> *First*, public access to criminal proceedings promotes informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial systems.
>
> *Second*, public access to criminal proceedings gives "the assurance that the proceedings were conducted fairly to all concerned and promotes the public "perception of fairness".
>
> *Third*, public access to criminal proceedings has a "significant community therapuetic value" because it provies an "outlet for community concern, hostility, and emotion."
>
> *Fourth*, public access to criminal proceedings serves as a check on corrupt practices by exposing the judicial process to public scrutiny, thus discouraging decisions based on secret bias or partiality.
>
> *Fifth*, public access to criminal proceedings enhances the performances of all involved.
>
> *Sixth*, public access to criminal proceedings discourage perjury.

"We believe that these interests are also present in the context of *pretrial criminal proceedings* and support a First Amendment right to attend such proceedings." *U.S. v. Criden*, at page 556. The courts have also held that the public right to be informed applies to *sentencing proceedings* as well as to the trial itself. *Miami Herald Publishing Co. v. State*, 363 So. 2d 603 (Fla 4th D.C.A. 1978); *Craig v. Harney*, 331 U.S. 367 (1947).

### B) RIGHT OF ACCESS TO A DISCOVERY DEPOSITION

Black's Law Dictionary, defines a deposition as follows at page 527 . . .

> "The testimony of a witness taken upon interrogatories, *not in open court*, but in pursuance of a commission to take testimony issued by a court, or, under a general law on the subject, and reduced to writing and duly authenticated, and intended to be used upon the trial of an action in court."

> "The term sometimes is used in a special sense to denote a statement made orally by a person on oath before an examiner, commissioner, or officer of the court, (*but not in open court*) and taken down in writing by the examiner or under his direction."

The right to take a deposition in criminal proceeding for discovery purposes is afforded by Rule 3.220, Florida Rules of Criminal Procedure. The Sixth Amendment guarantees the right of an accused to confront the witnesses against him; however the primary interest secured by the clause is the right of cross-examination rather than the right of physical confrontation. *Davis v. Alaska,* 415 U.S. 308 (1974). The confrontation or examination guaranteed by the Sixth and Fourteenth Amendments is confrontation *at trial. Nelson v. O'Neal,* 402 U.S. 662 (1971). Thus, an out of court statement made in the *absence of the accused,* may be admitted as evidence as long as the declarant testifies at the trial and is subject to full and effective confrontation. In *State v. Dolen,* 390 So 2d 407 (Fla. 5th D.C.A. 1980), the Court stated:

> The scope of the *"trial"* has not been extended to *"discovery depositions"* as they are not true "judicial proceedings."

In *Tallahassee Democrat, Inc., v. Willis,* 370 So. 2d 867 (Fla. 1st D.C.A. 1979), the Court stated at page 872, footnote #4, . . . . . .

> "We agree with respondent's observation that depositions are "tools of discovery and preserving evidence", but we would add further qualifications and observations. A deposition does not become evidence in a case unless and until admitted by ruling of the court at a trial or hearing; that depositions very often contain matters that are not and can never be considered as evidence, since the scope of inquiry on depositions is not limited as in examination of a witness in a judicial proceeding; that persons not even parties to the case are often compelled under process of law to divulge information that is not intended for use as evidence; but merely to elicit or lead to information that might explain other evidence or become admissible as evidence; and the taking of a deposition itself can hardly be categorized as a judicial proceeding: for the simple reason that there is no judge present, and no rulings nor adjudications of any sort are made by any judicial authority. Further, in *criminal* cases, discovery depositions taken under Rule 3.220(d), Fla. R.Cr. P. may be used only "for the purpose of contradicting or impeaching the testimony of the deponent as a witness"; and deposition testimony may be used as evidence at the trial only if taken to perpetuate testimony under Rule 3.190(j) requiring a court order, notice to defendant, and, if defendant is in custody, his presence at the deposition, and a showing that attendance of the witness cannot be procured at the trial. *State v. Basiliere, 353 So. 2d 820 (Fla 1978).*

This has been followed by the Fifth District Court of Appeal in *Ocala Star Banner Corp. v. Sturgis,* 388 So. 2d 1367 (Fla 5th D.C.A. 1980). The Court in *Ocala* further stated at page 1371 . . .

> "We therefore conclude that the press does *not* have the absolute right to attend the taking of a deposition, that its presence may be regulated by the Court under Rule 1.280(c). . . ."

In *Times Newspaper Limited v. McDonnell Douglas Corp.,* 387 F. Supp. 189 (C.D. Cal. 1974), the Court cites *United States v. United States Shoe Machinery Co.,* 198 F. 870 (1912), as follows. . . .

> "The cases cited by the United States which uphold the undisputed principle of publicity in trials and in judicial proceedings do not in the slightest degree support the contention of the United States. This question is whether the public and the press should be admitted to the taking of depositions for use at a trial not then begun, but which is to take place in the future."

> "The question is easily solved upon a consideration of the essential difference between a trial or a judicial proceedings held by an officer with judicial authority, and the merely preliminary step of taking depositions . . . [a deposition is] testimony given extrajudicially . . for the purpose of subsequent use in a *trial* . . ."

The Court further pointed out:

> "Both common law judges and juries are compelled to receive testimony in the form of written depositions, and upon such written testimony of witnesses whom they have never seen nor heard may make decisions as to the right of parties. . . ."

> "If judges and juries may not object that they have not seen and heard the witness while he is testifying, the press and public may not object."

> "Furthermore, neither at law nor in equity does a deposition become evidence in a case until it is offered by one of the parties; until there is an opportunity for a judicial hearing as to its competency. . . . . ."

> "The only opportunity for redress which the party has against improper or irrelevant testimony follows the filing of the deposition."

"If all is to be made public before it is reduced to final form in writing and before there is an opportunity for a hearing upon the propriety and competency of the testimony, all effective protection against scandal, impertinence, and irrelevancy is pratically gone. . . ."

"For the court to enforce a rule that the public and the press shall have [a right] to listen before the parties to the case have an opportunity to be heard would be a plain violation of elementary rules of fair play. . . ."

"The provisions in these rules [former Equity Rules, now essentially incorporated in F.R. Civ. P.] is an indication that oral proceedings before an examiner are regarded as essentially different from proceedings in open court. It is quite clear that the taking of depositions, either at law or equity, is in no proper sense a trial or a part of a judicial trial, using the term to mean "that final examination and decision of matter of law as well as fact, for which every sntecedent step is a preparation, which we commonly denominate the trial]."

The *Times Newspaper Limited* case concludes. . . . . .

"In sum, this Court holds: That depositions before a qualified officer in an equity or law case *are not a judicial trial,* nor a part of a trial *but* a proceeding preliminary to a trial and neither the public nor representatives of the press have a right to be present at such taking." at page 197.

Black's Law Dictionary defines a judicial proceeding as follows at page 986. . . . .

Any proceeding wherein judicial action is invoked and taken. . . . Any proceeding to obtain such remedy as the law allows. . . . A proceeding in a legally constituted court. . . . . A proceeding where there are parties, who have opportunity to be heard, and wherein the tribunal proceeds either to a determination of facts upon evidence or of law upon proved or conceded facts.

The Appellate Court cases cited by The Tampa Tribune deal specifically with prior restraints by the trial courts in judicial proceedings to wit: *pretrial suppression hearings and criminal or civil trials.* The case that is cited for the proposition that a pretrial deposition is public judicial proceeding is *Florida v. Diggs,* 5 med. L. Rptr 2598, (1980). However, in reviewing each of the appellate cases cited therein, there is not one

appellate decision that states that a pretrial deposition is a public judicial proceeding.

This court is also of the opinion that the "McIntosh Test" or the 3-prong test established by *Miami Herald Publishing Co. v. McIntosh* supra, as modified by *Miami Herald Publishing v. Lewis,* supra, applied only to judicial proceedings.

It is this Court's opinion that based on the above cited authorities, a discovery deposition is not a judicial proceeding, where the public nor the press have a right to be present.

ORDERED AND ADJUDGED, that the Motion of The Tampa Tribune to be present during the taking of discovery depositions is hereby denied. Pre-trial discovery depositions shall be closed to the public and the press until they are transcribed and filed in the court file. The parties may apply to the court to seal specific depositions where legally sufficient factual basis may be alleged and proven by the moving party. Said motions shall be filed sufficiently in advance so as to permit a hearing upon such sealing with notice to The Tampa Tribune.