493 So.2d 1048 (1986)
SENTINEL COMMUNICATIONS COMPANY, Petitioner,
v.
The Honorable D.C. SMITH, Etc., Respondent.
No. 86-36.
District Court of Appeal of Florida, Fifth District.
July 3, 1986.
Rehearing Denied September 11, 1986.
William G. Mateer and Clay H. Coward, of Mateer & Harbert, P.A., Orlando, for petitioner.
E. Thom Rumberger, Sharon Lee Stedman, Michael R. Levin, and David R. Gemmer, of Rumberger, Kirk, Caldwell, Cabaniss & Burke, P.A., Orlando, for respondent Dominick J. Salfi.
Alan B. Robinson, Orlando, for Dominick J. Salfi, Jr., Dea Salfi Barrs and Don Salfi, respondents.
Mark P. Rabinowitz, of Heffernan & Rabinowitz, P.A., Altamonte Springs, for Dawn Salfi, respondent.
No appearance for The Honorable D.C. Smith, Retired Circuit Judge.
COWART, Judge.
This case involves the rights of the parties, and children of the parties, to have the court records in a domestic relations case sealed and kept sealed as against the desire of a newspaper to have the court records unsealed and the contents published.
From time immemorial in Florida, and elsewhere, trial judges, particularly juvenile judges and chancery judges sitting in domestic relations cases, have had, and regularly exercised, an inherent judicial discretion to hear certain civil cases in chambers from which the public is excluded and to seal court records in civil cases in the interests of the rights of privacy of the litigants and witnesses and other third parties. It is an essential governmental function to provide citizens with an impartial forum in which they may present and resolve their private disputes and controversies. In order to fairly resolve many such private controversies it is necessary for the litigants and witnesses to assert and admit embarrassing intimate details of the private lives of the litigants and of innocent third persons. If this cannot be done without the deterrence of unwanted publicity the legal system cannot meet the basic need for which it is established. While citizens collectively as the general public have a right to know how the legal system is functioning  so that the system can be *1049 altered and reformed  neither the general public nor the press has a legitimate right to intrude into a long closed court case in order to learn, publish, and sell embarrassing assertions as to the intimate details of an individual citizen's private life, merely because the assertions and details have been disclosed in a judicial forum in a case involving private civil litigation to which the general public  the State  is not a party.
The case here is a usual domestic relations case. Court records of the case were sealed from public view and inspection by the original trial judge in a normal manner at the behest of one or more of the parties. That action was recognized as proper, and was ratified by the successor trial judge entering the final judgment in the case. Those discretionary judicial acts were not appealed and are presumed in law to be correct. There is absolutely no basis in the record in this case for considering, concluding, or holding that those two trial judges abused their judicial discretion in originally sealing the court records in this case.
Long after the final judgment was entered in the domestic relations case a newspaper filed a motion to intervene as a party in the closed case and also filed a motion to unseal the court case file. The same trial judge who entered the final judgment heard and considered the newspaper's motion to unseal the domestic relations court file. After the newspaper was duly given an opportunity to present evidence and legal argument, the trial court, with knowledge of the contents of the sealed court file, denied the newspaper's motion and the newspaper seeks review in this court under Florida Rule of Appellate Procedure 9.100(d).
Certainly there can be real conflicts between the public's right of access to judicial proceedings and records, for the legitimate purpose of ascertaining if the judicial system is working properly, and the legitimate rights of every natural person to be let alone, with his private life and affairs free from intrusion by the government, the public at large, and the press. Newspapers have no greater or different right of access to court proceedings and court records than does the public in general, and the public's right to know is not all encompassing or absolute. In this case, as in all cases, the burden is on the movant, the newspaper here, to demonstrate to the trial court that the original order sealing the court records was legally in error, or if the original sealing was correct, to demonstrate that there has been such a substantial, material change in circumstances that under law it is error to keep the court records sealed. No such showing was made in this case. On this review the burden is on the petitioner to demonstrate that the trial judge has abused his discretion. This has not been done.
The fact that the husband-father in the domestic relations case was, and is, a judge does not distinguish this case from all other similar cases. People get married and divorced, not as judges, doctors, lawyers, editors, preachers, policemen, plumbers, plasterers, or painters, but as natural human beings just as all other citizens. The husband-father and the wife-mother and their children in this case have, and should have, the same rights in domestic relation litigation as every other citizen  no more and no less. If the privacy rights[1] of the litigants and third persons in this case are not recognized and respected, then no citizen has any right of privacy in private litigation.
PETITION FOR REVIEW CONSIDERED; ORDER REVIEWED AFFIRMED.
DAUKSCH, J., concurs and concurs specially with opinion.
SHARP, J., dissents with opinion.
*1050 DAUKSCH, Judge, concurring specially:
I concur with the ruling and sentiments expressed by Judge Cowart and write only to add a thought and answer the dissent.
In answering the dissent, I point out that her proposal to remand the case for further proceedings is not in keeping with due process requirements. Petitioner was given an opportunity to present evidence at the hearing to unseal the file and specifically declined to present any evidence. This is so even though the respondent, Salfi, had presented evidence from Sara Roen, a Sentinel reporter who testified about her having been aware of the closure for over a year. Of course the Sentinel could have called any other witnesses.
Whether to seal or unseal a court file is a balancing test. I agree with both Judge Cowart and Judge Sharp in that regard. The circuit court judge who denied the request to unseal the file, and whose order we now review, was also aware of that balancing test. In his ruling he said he had reviewed the sealed court file in camera and was also aware of the entire case between the divorcing parties because he had been the trial judge in the case after the first trial judge left. He remarked that the case was before him for a protracted period of time and that he found it necessary to urge the parties to either proceed with their case or dismiss it. He also said the case ended with no testimony having been taken which supported any of the matters which the petitioner now seeks to have made public. The trial judge said that Mrs. Salfi had made certain allegations regarding family members and their problems which were never substantiated by any evidence.
In face of these statements, and after they were made at the hearing, the petitioner still declined to present any evidence to tip the balance toward its side. No evidence whatsoever was adduced by petitioner regarding the "rights and interests of the public and the press". In State ex rel Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1977), it was said
In determining restrictions to be placed upon access to judicial proceedings, the court must balance the rights and interests of the parties to litigation with those of the public and press.
McIntosh at 908.
The petitioner was given its chance to present evidence in support of its petition; it declined or failed to do so. There is no legal basis to permit a litigant, even a newspaper, a second chance to try to prove its case.
SHARP, Judge, dissenting.
I respectfully dissent because in my view the majority opinion is contrary to the law as it has developed in Florida. I do not think the trial judge's decision to keep the file sealed was based on an adequate record, and I would remand for further proceedings.
This case commenced in our court when the Sentinel Communications Company petitioned for review of a trial court's order which refused to unseal judicial records in a dissolution proceeding. The basis for our jurisdiction is Appellate Rule 9.100(d)(1). It provides for appellate review of orders which exclude "the press or public from access to any proceeding, any part of a proceeding, or any judicial records... ."
The manner in which this case arrived in our court is somewhat unusual, although the factual background is not. In July of 1982, Judge Salfi, a circuit judge who was presiding in the Eighteenth Judicial Circuit, encountered marital difficulties. He and his wife filed petitions for dissolution, and the case was assigned outside of the circuit to Judge G. Kendall Sharp in Vero Beach. Upon Judge Salfi's motion, Judge Sharp entered an order dated October 26, 1983, which sealed the file accumulating after that date. He made a finding that closure was necessary to protect the interests of the Salfis' minor children, and to protect the fair trial rights of the litigants. It is not clear from the record that Judge Sharp heard any testimony or evidence prior to sealing the file, but no notice of intent to *1051 close the file was given to the Sentinel or to any other member of the press.
Soon thereafter, Judge Sharp ascended to the federal bench, and the Salfi case was assigned to the current trial judge, Judge D.C. Smith. The case was dormant for a time, but at Judge Smith's urgings to either dismiss it or get on with it, discovery matters were heard by Judge Smith in 1984. In January of 1984, Judge Salfi again moved to seal the court file. Judge Smith denied the motion because he thought Judge Sharp's order was still effective. No notice to the press was given, but the parties to this proceeding stipulated that a reporter for the Sentinel learned the court file had been sealed in October of 1984.
In March of 1985, a final judgment was entered in the dissolution case. During the course of the present proceedings, Judge Smith reviewed the sealed records in camera. He stated that the final judgment was based on the parties' Settlement Agreement. No testimony or evidence was ever taken in the case. The file consists solely of pleadings, some of which were bitter and acrimonious, and some answers to deposition questions.
The final judgment contains references to the Salfis' agreement to seal the file permanently, and the judgment implements their agreement by continuing the closure order indefinitely. No reasons are recited in the judgment for sealing it; no evidence was taken to justify it; and no notice was given to the Sentinel or any other member of the news media that the file would be permanently sealed.
Following the Sentinel's publication of a series of articles concerning Judge Salfi in October of 1985, the petitioner filed motions to unseal the court file, and to intervene as a party. The Salfi children also filed motions to intervene to protect their rights of privacy by objecting to the opening of the court file. Judge Smith granted all intervenors' motions to enter the case as parties. This action was not timely appealed to this court.
At the hearing on the Sentinel's motion to unseal the court file, attorneys representing Judge Salfi and the four Salfi children appeared. Only one of the children was then a minor. Aside from testimony from the Sentinel's reporter, no evidence was presented to the trial judge concerning why it was necessary to continue closure of the file. Nor did Judge Smith consider unsealing portions of the file which would not be detrimental to his stated finding that the one remaining minor child had been adversely affected by his parents' dissolution litigation and that "continued publicity in all likelihood would be highly detrimental to him."
In some jurisdictions, divorce proceedings are routinely closed from public view by rule or statute. See Stevenson v. Hearst Consol. Publ., 214 F.2d 902 (2d Cir.1954), cert. denied, 348 U.S. 874, 75 S.Ct. 110, 99 L.Ed. 688 (1954); C. v. C., 320 A.2d 717 (Del.Super. 1974); Danziger v. Hearst, 304 N.Y. 244, 107 N.E.2d 62 (N.Y. 1952). However, in Florida dissolution cases are treated no differently than other civil cases, regarding the right of access of the press or public to hearings or to judicial records. State v. Tyson, 313 So.2d 777 (Fla. 4th DCA 1975), reversed on other grounds, English v. McCrary, 348 So.2d 293 (Fla. 1977). The wishes of the parties to close the proceedings is not a sufficient basis to establish closure. Tyson. There must be other valid and cogent reasons. It may be that the right of privacy (now specifically protected in the Florida Constitution, Art. I, § 23, since 1980) would change the result in Tyson. However, this ground for closure was not the one relied upon by either of the trial judges involved in this case.
The right of the press or the public to obtain access to civil court proceedings or to judicial records appears to be a common law rule, rather than one mandated by the Florida Constitution or the Federal Constitution. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); Johnson v. State, 336 So.2d 93, 95 (Fla. 1976) (dictum); Miami Herald Publishing Co. v. Collazo, 329 So.2d 333, *1052 336 (Fla.3rd DCA), cert. denied, 342 So.2d 1100 (Fla. 1976); 66 Am.Jur.2d Records § 15. In this regard, civil cases are distinguishable from criminal cases. See Miami Herald Publishing Co. v. Lewis, 426 So.2d 1, 5 (Fla. 1982); Palm Beach Newspaper, Inc. v. Cook, 434 So.2d 355, 357 (Fla. 4th DCA 1983); Sentinel Star Co. v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980), review denied, 399 So.2d 1145 (Fla. 1981).
The common law right of access to judicial records in civil cases is therefore not absolute, and it may be properly denied or limited by court order under proper circumstances. In various kinds of civil cases public access to judicial proceedings or records may be barred by statute,[1] in the interest of protecting vulnerable persons from harmful publicity.[2] Similarly in dissolution cases, closure orders may be appropriate to protect minors or innocent parties. See Claughton v. Claughton, 344 So.2d 944, 947 (Fla. 3rd DCA 1977) (dictum).
The problem in these cases is to balance the strong policy in Florida of open government and public access to judicial proceedings and records, with other important interests which demand protection from publicity. A related problem is to insure that a proper judicial procedure is followed to weigh these competing interests.
Because there is in this state such a strong policy for giving the public access to courts and court records, both criminal and civil,[3] the reasons or grounds for limiting or barring access must be strong rather than mild, cogent rather than plausible, and real rather than hypothetical. United States v. Edwards, 672 F.2d 1289 (7th Cir.1982); Sentinel Star Co. v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980), review denied, 399 So.2d 1145 (Fla. 1981); News-Press Publishing Co., Inc. v. State, 345 So.2d 865 (Fla.2d DCA 1977); Miami Herald Publishing Co. v. Collazo, 329 So.2d 333 (Fla.3rd DCA), cert. denied, 342 So.2d 1100 (Fla. 1976); Tyson; cf. Ocala Star Banner Corp. v. Sturgis, 388 So.2d 1367 (Fla. 5th DCA 1980). I do not think the "three prong test" reformulated by the Florida Supreme Court in Miami Herald Publishing Co. v. Lewis is strictly applicable to civil cases.[4] Nor do I think that it is necessary to give advance notice to the press that civil proceedings or records will be closed or sealed, so long as the public or press has an opportunity to challenge the closure or the extent of it at a later time.[5]
When a closure order is challenged as in this case, the trial court should conduct an evidentiary hearing to determine in its discretion whether or not there is a present, valid reason for sealing records or closing a proceeding,[6] and to determine whether or not the closure order is as limited as possible to achieve the purpose or interest sought to be protected by the closure or sealing order. The burden of proof to seal or close records or proceedings is on those parties seeking to exclude the public. Miami-Herald Publishing Co. v. Lewis; Ocala Star Banner Corp. v. Sturgis. However, in a non-criminal case a showing of "strict necessity" should not be required.
Because in this case the rules regarding burden of proof were neither understood nor followed by the court and because they are not clear in our jurisdiction, I would reverse but remand for the purpose of holding an evidentiary hearing which comports *1053 with the required procedure. See Sentinel Star Co. It may be that with the passage of time, the reasons for closure of the records, in this case  fair trial rights of the parties; mental health and welfare of the minor children  are no longer pressing or valid. Or it may be that portions of the records may now be unsealed without the consequences foreseen at the time of closure.
The trial court should make an in camera inspection of the sealed records (as Judge Smith did in this case),[7] and it should require testimony or evidence justifying the closure to arrive at these determinations. Although not strictly required by our Civil Rules of Procedure, in such cases as this, the trial judge should make findings of fact and conclusions of law to assist the appellate court in expediting review of any orders pursuant to rule 9.100(d)(1).[8] In my view, the record of the proceedings below in this case indicate the trial judge was not presented with sufficient evidence on these points to permit him to make such a discretionary determination.[9]
NOTES
[1] The United States Supreme Court has long recognized that several of the fundamental constitutional guarantees have created a penumbral right to privacy that is no less important than the rights expressly specified in the Constitution. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). See also Art. I, § 23, Fla. Const.
[1] § 63.162(2), Fla. Stat. (1985); § 742.09, Fla. Stat. (1985); § 39.12, Fla. Stat. (1985); cf. Gadsden County Times, Inc. v. Willis, 377 So.2d 817 (Fla. 1st DCA 1979); Crespo v. State, 344 So.2d 598 (Fla. 3rd DCA 1977).
[2] In Re Adoption of H.Y.T., 458 So.2d 1127 (Fla. 1984).
[3] See Miami-Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982); State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 908 (Fla. 1976); Goldberg v. Johnson, 485 So.2d 1386 (Fla. 4th DCA 1986); Miami Herald Publishing Co. v. Collazo, 329 So.2d 333, 336 (Fla. 3rd DCA), cert. denied, 342 So.2d 1100 (Fla. 1976).
[4] But see Goldberg v. Johnson, 485 So.2d 1386 (Fla. 4th DCA 1986).
[5] See Sentinel Star Co. v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980, review denied, 399 So.2d 1145 (Fla. 1981).
[6] Id.
[7] See News Press Publishing Co. v. State, 345 So.2d 865, 867 (Fla.2d DCA 1977).
[8] Sentinel Star Co. v. Edwards, 387 So.2d at 375; News Press Publishing Co. v. State, 345 So.2d 865 (Fla.2d DCA 1977); cf. Miami-Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982).
[9] See Ocala Star Banner Corp. v. Sturgis, 388 So.2d 1367 (Fla. 5th DCA 1980).