736 So.2d 699 (1999)
Denzil WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2872.
District Court of Appeal of Florida, Fourth District.
April 14, 1999.
Rehearing Denied June 3, 1999.
*700 Richard L. Jorandby, Public Defender, and Cherry Grant, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Denzil Williams appeals the judgment and sentences entered against him after a jury found him guilty of first degree murder with a firearm, aggravated battery with a firearm, and aggravated battery with a deadly weapon. We address only the first of Williams' eight issues on appeal, in which he alleges a violation of his right to a public trial as guaranteed by the Sixth Amendment to the United States Constitution and article I, section 16 of the Florida Constitution. We conclude error occurred, therefore we must reverse Williams' judgment and remand for a new trial. Our resolution of this issue renders Williams' other points on appeal moot.

FACTS
The death qualifying phase of voir dire in Williams' two-week trial began on June 2, 1997. Two panels of eighteen potential jurors were questioned on this date, with a third panel of eighteen potential jurors questioned the next morning. Before breaking for lunch, the court and counsel discussed the logistics of seating forty-seven potential jurors in the courtroom during voir dire. The court noted there would be no room to seat observers:
THE COURT: But if either of you, either of the sides have folks who have been sitting in during the trial so far, please make sure they understand that we won't be able to have them present while we are using the pew for the jurors.
Williams posed no objection to the court's instruction.
When the entire venire panel was seated in the courtroom on the afternoon of June 3, 1997, the court held a sidebar conference to discuss the voir dire procedure. As the discussion concluded, the following exchange occurred:
MR. BEERS [Williams' Counsel]: Yes, I do [need to cover another issue]. The family, there are three people out there; Mr. Williams' mother, his brother and another family member, potential family member, that came down from New York and they specifically asked me outside. They realize that the room is short, but they came such a long way to be here with him, and I would ask if the Court could make some kind of arrangement so they could be here and sit and listen to this.
THE COURT: There is no arrangement I can make for them to be present right now during voir dire because every seat in the house is filled with potential jurors.
MR. BEERS: How about the jury box?
THE COURT: I will not allow anybody to sit in the jury box unless they are a prospective juror.
MR. BEERS: Perhaps, I hate to have them up in the courtroom but maybe bring in some chairs and put them along 
THE COURT: Way in the back?
MR. BEERS: Just so they could listen and hear the responses.
THE COURT: I am sorry, I can't grant your request. They will be welcomed in the courtroom as soon as there are seats for them but, right now, there are no seats for them.
Voir dire continued through June 4, 1997, and although the record does not reveal whether observers were allowed in the courtroom, Williams contends his family members were again excluded. Williams posed no express objection to the exclusion of his family members from the courtroom during voir dire.
The record reflects Williams is an African-American. The sole African-American *701 member of the venire panel was not reached during the closed jury selection process. When Williams' family members were first allowed into the courtroom as the trial began, they observed that none of the twelve members of Williams' jury were of the same race as Williams.

FUNDAMENTAL ERROR
We turn first to the question of whether the alleged error constitutes fundamental error such that it may be raised for the first time on appeal. We disagree with Williams' contention that his several requests to allow his family to sit in the jury box or in the back of the courtroom were equivalent to an objection on the basis of a potential Sixth Amendment violation. The above-quoted exchange between defense counsel and the court suggests the trial judge may have been unaware of Sixth Amendment implications, much less any formal Sixth Amendment objection having been raised by counsel. Rather, we conclude Williams posed no contemporaneous objection below, and raises a Sixth Amendment violation for the first time on appeal.
The United States Supreme Court has found "plain error," or fundamental error, affecting the substantial rights of the parties only in a very limited class of cases. Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Among this limited class are cases concerning the total deprivation of the right to counsel, the lack of an impartial trial judge, the unlawful exclusion of grand jurors of defendant's race, the right to self-representation at trial, the right to a public trial, and the giving of an erroneous reasonable doubt instruction. Id. at 467, 117 S.Ct. at 1549 (citations omitted). Such errors are considered "structural," or "defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "`Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" Id. (quoting Rose v. Clark, 478 U.S. 570, 577-578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (citations omitted)).
The fact that the denial of the right to a public trial concerns plain error cognizable for the first time on appeal is best understood with reference to the significance of this right. The right to a public trial has been recognized as arising out of "the distrust for secret trials ... variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French Monarchy's abuse of the lettre de cachet." In re Oliver, 333 U.S. 257, 268-269, 68 S.Ct. 499, 92 L.Ed. 682 (1948). "[A]t the time of the adoption of the Sixth Amendment the common law concept of a public trial had come to be regarded as an essential guarantee against any attempt to employ the courts as instruments of persecution." United States v. Kobli, 172 F.2d 919, 921 (3d Cir.1949). The several essential purposes served by the public trial guarantee include: "allowing the public to see that a defendant is fairly dealt with, encouraging trial participants to perform their duties more conscientiously, discouraging perjury, and bringing forth witnesses who might not otherwise testify." Douglas v. Wainwright, 739 F.2d 531, 532 (11th Cir. 1984).
Thus, we hold Williams' assertion that he was denied the right to a public trial as guaranteed by the Sixth Amendment is an issue that concerns fundamental error, which we will review on appeal despite the absence of a contemporaneous objection below.

GENERAL PRINCIPLES
The Supreme Court has extended the Sixth Amendment right to a public trial to voir dire proceedings. Press-Enterprise *702 Co. v. Superior Court of California, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). As the court in People v. Taylor, 244 Ill.App.3d 460, 183 Ill.Dec. 891, 612 N.E.2d 543 (1993) noted:
We find that even though the violation came during the jury selection process, it is impossible to separate that part from the rest of the trial. The sixth Amendment protects all of the trial component parts, and not simply the right to present publicly evidence and witnesses. If the sixth amendment right is to have any vitality, we may not selectively ordain which portions of a trial are insignificant and therefore eligible for closure.
Id. at 549 (citations omitted).
The principles applicable to the right to a public trial were discussed in Pritchett v. State, 566 So.2d 6 (Fla. 2d DCA 1990), where the court stated:
Both the Sixth Amendment to the United States Constitution and article I, section 16 of the Florida Constitution provide the accused with the right to a public trial. While we recognize that the right of access in a criminal trial is not absolute, the circumstances allowing closure are limited. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). In order to justify any type of closure, whether the closure is total or partial, the court must find "that a denial of such right is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest." 457 U.S. at 607, 102 S.Ct. at 2620.
The appropriate analysis to follow to determine whether a particular case warrants closure is set forth in Waller [v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)]. There are four prerequisites that must be satisfied before the presumption of openness may be overcome. First, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; second, the closure must be no broader than necessary to protect that interest; third, the trial court must consider reasonable alternatives to closing the proceedings; and fourth, the court must make findings adequate to support the closure. Waller, 467 U.S. at 47, 104 S.Ct. at 2215.
Pritchett, 566 So.2d at 7.
As the court noted in Douglas v. Wainwright, 714 F.2d 1532 (11th Cir.1983), "[t]he United States Supreme Court has never specified whose presence, at a minimum, must be allowed to ensure a defendant a constitutionally guaranteed public trial." Id. at 1537.[1] Often quoted as the most succinct definition of "public trial" are the words of Justice Harlan in his concurring opinion in Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965):
Essentially, the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings. A fair trial is the objective, and `public trial' is an institutional safeguard for attaining it.
Thus the right of `public trial' is not one belonging to the public, but one belonging to the accused, and inhering in the institutional process by which justice is administered. Obviously, the public trial guarantee is not violated if an individual member of the public cannot gain admittance to a courtroom because there are no available seats. The guarantee will already have been met, for the `public' will be present in the form of those persons who did gain admission. Even the actual presence of the public is not *703 guaranteed. A public trial implies only that the court must be open to those who wish to come, sit in the available seats, conduct themselves with decorum, and observe the trial process.
Id. at 588-89, 85 S.Ct. 1628.
The Douglas court noted several cases in which a partial or total closure of the courtroom has been upheld:
Prior to the recent Supreme Court decisions on the first amendment right of access, several of the United States Courts of Appeals decided that a defendant's right to a public trial was not violated when the closure was partial, in that family members and/or the press were allowed to remain, and the exclusion of the public was narrowly limited in scope to a legitimate purpose for which it is ordered. United States ex rel. Latimore v. Sielaff, 561 F.2d 691, 694-96 (7th Cir.1977) (to protect dignity of witness in rape trial); United States v. Eisner, 533 F.2d 987, 993-94 (6th Cir.), cert. denied, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976) (to protect witness with fear of testifying in public); United States ex rel. Bruno v. Herold, 408 F.2d 125 (2d Cir.1969) (to protect witness afraid of testifying); United States ex rel. Orlando v. Fay, 350 F.2d 967 (2d Cir.1965), cert. denied sub nom. Orlando v. Follette, 384 U.S. 1008, 86 S.Ct. 1961, 16 L.Ed.2d 1021 (1966) (to protect witnesses from intimidation); Geise v. United States, 262 F.2d 151, 155 (9th Cir.1958), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959) (to protect child witnesses in rape trial from embarrassment). Others held that even where the closure is total and the press and family members, as well as the general public, are excluded, but only for a limited, justifiable purpose and period of time, the public trial guarantee is honored. United States v. Hernandez, 608 F.2d 741, 747-48 (9th Cir.1979) (to protect witness and his family where safety threatened); United States ex rel. Lloyd v. Vincent, 520 F.2d 1272, 1274 (2d Cir.), cert. denied, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975) (to preserve confidentiality of undercover agents in narcotics case); Stamicarbon, N.V. v. American Cyanamid Co., 506 F.2d 532, 539-42 (2d Cir.1974) (to protect from disclosure of trade secrets). But see United States ex rel. Bennett v. Rundle, 419 F.2d 599, 607-08 (3d Cir.1969) (writ of habeas granted because exclusion of public did not meet "standard of strict and inescapable necessity" where jury had retired from courtroom for hearing on suppression of evidence and only purpose of exclusion was to protect the defendant); United States v. Kobli, 172 F.2d 919 (3d Cir.1949) (conviction reversed where exclusion of public for protection of public morals swept too broadly; exclusion of only youthful spectators would have been appropriate); Tanksley v. United States, 145 F.2d 58 (9th Cir. 1944) (conviction reversed where only press, necessary courtroom personnel and family members allowed throughout the trial).
Id. at 1539.

ERROR IN EFFECTING TOTAL CLOSURE OF COURTROOM
The trial court's total exclusion from the courtroom during voir dire of all members of the public, including Williams' family members, absent a most compelling justification, compels reversal of Williams' judgment.[2] The instant case is unlike each of those cited in Douglas because here the closure was total rather than partial, and the exclusion of the public and family *704 members was not narrowly limited in scope to a legitimate purpose.
Application of the Waller prerequisites supports reversal. As to the first Waller prerequisite, the "overriding interest that is likely to be prejudiced" apparently concerned overcrowding or safety in the courtroom, although no interest was expressly stated by the trial court. Applying the second prerequisite, the trial court's total closure of the courtroom was broader than necessary to protect that interest in that it appears three chairs could have been set up in the back of the courtroom to accommodate Williams' family without any serious breach of safety measures. At no point was it made clear that placing three chairs in the back of the courtroom would jeopardize public safety. As to the third Waller prerequisite, reasonable alternatives to total closure of the courtroom were not considered, rather each of William's suggestions was rejected without much consideration. Finally, no requisite findings adequate to support the closure were made. The record contains no findings from which this court is able to determine that the public safety or welfare would have been compromised had Williams' three family members been allowed to sit in the back of the courtroom during voir dire.
Thus, application of the Waller prerequisites supports our conclusion Williams' judgment must be reversed and remanded for a new trial because the presumption of openness was not overcome in this case, and the total closure of the courtroom during voir dire amounted to a violation of Williams' Sixth Amendment right to a public trial. We distinguish Robertson v. State, 64 Fla. 437, 60 So. 118 (1912), where the trial court excluded the general public but allowed interested persons to remain during the defendant's manslaughter trial based on "the character of the charge and nature of the evidence." Id. at 119.
We also note Williams cannot be found to have waived his right to a public trial by having failed to object. While fundamental constitutional rights such as the right to a public trial can be waived when a defendant so chooses, "[a]n effective waiver of a constitutional right must be voluntary, knowing, and intelligent." Tucker v. State, 559 So.2d 218, 219 (Fla. 1990) (citing Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). The record before us does not demonstrate a knowing and intelligent waiver. See also Martineau v. Perrin, 601 F.2d 1196 (1st Cir.1979) (noting a criminal defendant can waive the constitutional right to a public trial, citing Singer v. United States, 380 U.S. 24, 34-35, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) and Levine v. United States, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960), but stating such waiver must be intentional and knowing); People v. Daughtry, 242 A.D.2d 731, 732, 664 N.Y.S.2d 306 (1997) (holding defense counsel effectively waived the defendant's right to a public trial by consenting to the closure of the courtroom); People v. Bradford, 14 Cal.4th 1005, 60 Cal.Rptr.2d 225, 929 P.2d 544, 570, cert. denied, ___ U.S. ___, 118 S.Ct. 377, 139 L.Ed.2d 293 (1997) (same); Garren v. State, 220 Ga.App. 66, 467 S.E.2d 365, 367 (1996) (same); State v. Bone-Club, 128 Wash.2d 254, 906 P.2d 325, 327 (1995) (en banc) (noting defendant's failure to object contemporaneously to closure of pretrial suppression hearing did not effect a waiver of right to public trial).
Finally, we note that our opinion should not be read as implying that the trial court's conduct of the closed voir dire facilitated unfair treatment of Williams, poor performance on the part of the trial participants, or perjury on the part of the venire members. Such issues are not before this court. Rather, when a violation of the right to a public trial is established, the defendant is not required to prove specific prejudice, it is presumed. Waller, 467 U.S. at 49, 104 S.Ct. 2210. The harmless error rule does not apply to the closure *705 of courthouse doors. Id., 467 U.S. at 49 n. 9, 104 S.Ct. 2210.
We reverse Williams' judgment and remand for a new trial.
REVERSED and REMANDED.
POLEN, STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] The court's opinion in Douglas was vacated and remanded, 468 U.S. 1212, 104 S.Ct. 3580, 82 L.Ed.2d 879 (1984). The Eleventh Circuit again affirmed as to the public trial issue, 739 F.2d 531 (11th Cir.1984), and the defendant's attempt to secure certiorari review was denied, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).
[2] Williams correctly notes the closure of the courtroom here was "total" rather than "partial" because all members of the public were excluded from the courtroom during voir dire, including Williams' family members. See Douglas v. Wainwright, 714 F.2d 1532, 1539 (11th Cir.1983) (describing "partial" closure as occurring when family members and/or press allowed to remain, and "total" closure as occurring when press, family members, and general public excluded).