791 So.2d 544 (2001)
William WHITSON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-4320.
District Court of Appeal of Florida, Second District.
July 27, 2001.
*545 Richard C. Reinhart of Reinhart & Moreland, Bradenton, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
William Whitson appeals his convictions for handling and fondling a child under the *546 age of sixteen[1] and for capital sexual battery on a child under twelve,[2] contending that numerous legal errors permeated his trial. We find merit in his contention that the court reversibly erred by improperly closing the courtroom during his trial and grant Mr. Whitson a new trial. The remaining issues are moot.
Section 918.16(2), Florida Statutes (1999), empowers a trial court to clear the courtroom of all persons when certain victims of a sex offense testify. Because First Amendment and Sixth Amendment constitutional guarantees are implicated during a criminal trial, this power is not absolute. In tacit recognition of this limitation, section 918.16 carefully identifies those members of the public who are exempt from the statute's operation and who cannot be removed from the courtroom by the trial judge. Among the exempt individuals are members of the media and families of the parties.
The United States Supreme Court stated in Waller v. Georgia, 467 U.S. 39, 44, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), that the First Amendment grants to the press and public a qualified right to attend a criminal trial. Additionally, the Court observed that the Sixth Amendment right to a public trial is for the accused's benefit. Its purpose is to insure that criminal proceedings are fair and that "judge and prosecutor carry out their duties responsibly." Id. at 46, 104 S.Ct. 2210. Finding the closure of a pretrial hearing unjustified, the Waller Court set forth the test a trial court must use to close a proceeding:
[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.
Id. at 48, 104 S.Ct. 2210.
With this statutory and constitutional overview in mind, we set forth the relevant events in this case. Prior to calling the child victim, the prosecutor asked "that the courtroom be cleared." Mr. Whitson's counsel objected, arguing that section 918.16 requires a showing before closure can occur. The trial court disagreed, concluding that the "statute requires it." Accordingly, the trial court ordered that "all of the people other than the Defendant that are not parties to this will have to remain outside" until the child victim's testimony had been completed.[3] This closure was erroneous.
In Pritchett v. State, 566 So.2d 6, 7 (Fla. 2d DCA 1990), this court concluded that "the state has a very important interest in *547 protecting minor victims from further trauma" that might be caused by their testifying. Nonetheless, the court held that the four prerequisites of Waller must be satisfied before the presumption of an open trial is overcome and closure is permissible.
Here, as in Pritchett, the trial court erred by failing to make any findings that meet the Waller prerequisites for closure. "In order to justify any type of closure, whether the closure is total or partial, the court must find `that a denial of such right is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest.'" Pritchett, 566 So.2d at 6 (citing Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)). Similarly, in Williams v. State, 736 So.2d 699 (Fla. 4th DCA 1999), a trial court's exclusion from the courtroom of all members of the public during jury selection, absent compelling justification, necessitated reversal. Like the Fourth District, we require a Waller analysis prior to closure.
We further observe that section 918.16 does not authorize total closure of the courtroom but expressly provides that specific persons, including media representatives, are exempt from exclusion. Thus, the trial court's blanket exclusion of spectators was a statutory error as well.
Because this was a case of total, not partial, closure, we do not certify conflict with Clements v. State, 742 So.2d 338 (Fla. 5th DCA 1999), review dismissed as improvidently granted, 782 So.2d 868 (Fla. 2001). In Clements, the trial court ordered partial closure without testing its necessity in any manner, including consideration of the Waller factors. The Fifth District found that the trial court's decision not to undertake a Waller analysis did not constitute reversible error. "We hold that the four-factor inquiry of Waller is not imposed where the partial closure is entered pursuant to section 918.16, Florida Statutes." Id. at 341.
We observe that in this district Pritchett requires a Waller inquiry regardless of "whether the closure is total or partial." 566 So.2d at 7. Therefore, the likelihood of a future conflict between the districts seems almost a certainty, particularly since section 918.16, when followed, will result in partial closures in literally all cases because of the statutory exemptions from removal. Thus, the Clements rule could conceivably render the Waller inquiry a nullity. Such a result becomes particularly troublesome if Waller has established a judicial procedure intended to insure compliance with a federal constitutional right.
The language of the United States Supreme Court in Waller, we think, suggests that its holding established such a procedure. First, the Court identified the issue before it as "whether the defendant's Sixth Amendment right to a public trial" applies to a pretrial suppression hearing. It affirmatively answered the inquiry, stating that "the trial court failed to give proper weight to Sixth Amendment concerns." Waller, 467 U.S. at 43, 104 S.Ct. 2210. Next, the Court announced that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in Press-Enterprise[4] and its predecessors. Id. at 47, 104 S.Ct. 2210. The Press-Enterprise tests became the Waller tests. Thus, when a request for closure is made, under Waller the judiciary is to undertake *548 a case-specific analysis of each factor and evaluate the extent to which the proceeding may be closed, if at all. In certain instances, the statutory exclusions may suffice; in others, a greater or lesser exclusion may be mandated to assure compliance with Sixth Amendment guarantees.
A state statute cannot nullify a federal constitutional right. The statute can, however, indicate the status of a state constitutional right or guarantee. We think that Waller requires the performance of a judicial duty that cannot be obviated by merely relying upon a state statute.
Finally, although the issue is now moot, we note our grave concerns regarding the admissibility of child hearsay statements made to the lead detective.
Reversed and remanded for further proceedings consistent with this opinion.
ALTENBERND, A.C.J., and STRINGER, J., Concur.
NOTES
[1] § 800.04, Fla. Stat. (1997).
[2] § 794.011(2), Fla. Stat. (1997).
[3] On motion for rehearing the State has asserted, for the first time, that the closure was only partial because the child's mother and a victim advocate were present during the child's testimony. We have reread the record and find that it is ambiguous at best but that the State's view is at least arguable. We conclude, however, that the presence of either the alleged victim's mother or her guardian is of no constitutional moment and of no consequence to our analysis.

As we have noted above, section 918.16(2), Florida Statutes (1999), is designed to protect the child victim. If the mother and guardian were in fact present during the victim's testimony, the purposes of the statute were thus served, to the State's benefit. The prohibition against closure of a courtroom without an appropriate inquiry, however, inures to the benefit of the public at large and the accused, under the First and Sixth Amendments to the United States Constitution. By ordering exclusion of the public and the press without any analysis, the trial judge violated the defendant's constitutional right to a public trial.
[4] Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).