827 So.2d 269 (2002)
Guadalupe ALVAREZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-4671.
District Court of Appeal of Florida, Fourth District.
July 31, 2002.
Rehearing Denied October 21, 2002.
*270 Carey Haughwout, Public Defender, and Iva Oza, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.

EN BANC
WARNER, J.
Appellant challenges his sentence following revocation of community control on the ground that the court erred in closing the courtroom during his revocation hearing pursuant to section 918.16, Florida Statutes (2000). We affirm because appellant's failure to object to the closure waived his right to a public trial. In doing so, we recede from Williams v. State, 736 So.2d 699 (Fla. 4th DCA 1999), to the extent it holds that failure to object to the closure of the courtroom does not constitute a waiver of the right to a public trial.
Having pled and been adjudicated guilty of possession of cocaine, cannabis, and drug paraphernalia, the court placed appellant on drug offender probation. After violating his probation, appellant was placed on community control. Later, an affidavit of violation of community control was filed, alleging that appellant had violated two conditions by committing a lewd and lascivious act on someone under the age of sixteen and leaving his residence without permission.
During the revocation hearing, the state called the victim of the alleged lewd act, and the prosecutor asked the judge to "clear the courtroom pursuant to Florida Statute 918.16, a sex victim testifying." The court instructed everyone to step outside. The prosecutor then asked for the victim's mother and advocate to stay in the *271 courtroom. Defense counsel had no objection and made no other objection to the clearing of the courtroom. The court heard the testimony. After all the evidence was presented, the court found that appellant had violated the conditions of his community control. The court revoked appellant's community control and sentenced him to prison on the various charges, prompting this appeal in which appellant contends that he was denied his right to a public trial.
When a defendant is being denied the fundamental, constitutional right to a public trial, a court must engage in the following analysis:
There are four prerequisites that must be satisfied before the presumption of openness may be overcome. First, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; second, the closure must be no broader than necessary to protect that interest; third, the trial court must consider reasonable alternatives to closing the proceedings; and fourth, the court must make findings adequate to support the closure.
Pritchett v. State, 566 So.2d 6, 7 (Fla. 2d DCA 1990) (citing Waller v. Georgia, 467 U.S. 39, 47, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)).
Section 918.16 requires the closure of a courtroom when a victim of a sex offense testifies and provides:
(1) ... in the trial of any case, civil or criminal, when any person under the age of 16 ... is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at the request of the victim, victim or witness advocates designated by the state attorney's office.

(Emphasis added).
In Clements v. State, 742 So.2d 338, 341 (Fla. 5th DCA 1999), rev. dismissed as improvidently granted, 782 So.2d 868 (Fla. 2001), the court held that closure pursuant to section 918.16, which exempts from exclusion certain members of the public, particularly news reporters, was a partial closure of a trial and the four-factor Waller inquiry was unnecessary. The court reasoned that, in enacting section 918.16, the legislature has implicitly reviewed the Waller factors and found that a compelling state interest exists in protecting child sexual battery victims. It has adopted a procedure that is narrowly drawn to protect that right.
Nevertheless, appellant claims that this case involved a total closure of the courtroom because the court ordered everyone to be removed, not permitting any exempted class of persons to stay. However, because appellant never raised an objection, there is nothing in the record to show whether statutorily permitted observers were excluded or permitted to stay. The record is silent as to who was removed from the courtroom and who was allowed to stay, except for the victim advocate and the victim's mother.[1]
Regardless, as there was a closure, we must confront the question of whether appellant's right to a public trial can be waived by his failure to object to the closure. In Williams, 736 So.2d at 701, we held that failure to object to the closure of the courtroom does not constitute a waiver *272 of the right to public trial, thus making the denial of a right to public trial a fundamental error, for which no objection is necessary to preserve the issue on appeal.
The state argues that the Sixth Amendment right to a public trial does not extend to probation or community control revocation proceedings because a probation revocation hearing is not a criminal prosecution. See State v. Woodland, 602 So.2d 554, 555 (Fla. 4th DCA 1992). The supreme court recognized as much in Bernhardt v. State, 288 So.2d 490, 498 (Fla. 1974), in which it followed Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In Morrissey, the Court stated that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."[2] 408 U.S. at 480, 92 S.Ct. 2593. While not entitled to the "full panoply of rights," Morrissey held that a parolee is entitled to due process, guaranteeing a parolee certain procedural protections, such as notice of the violations, disclosure to the parolee of the evidence against him, opportunity to be heard and to present witnesses and evidence, the right to confront and cross-examine witnesses, a "neutral and detached" hearing, and a written statement by the fact-finders as to the evidence relied on and reasons for revoking parole. See id. at 481-89, 92 S.Ct. 2593. However, the question of a right to a public trial was not addressed in Morrissey.
In Levine v. United States, 362 U.S. 610, 616, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960), the right to a public trial in a criminal contempt proceeding was held to be a due process right, even though contempt proceedings are not considered "criminal prosecutions" to which the Sixth Amendment applies. Writing for the Court, Justice Frankfurter stated:
But while the right to a `public trial' is explicitly guaranteed by the Sixth Amendment only for `criminal prosecutions,' that provision is a reflection of the notion, deeply rooted in the common law, that `justice must satisfy the appearance of justice.' Accordingly, due process demands appropriate regard for the requirements of a public proceeding in cases of criminal contempt, as it does for all adjudications through the exercise of the judicial power, barring narrowly limited categories of exceptions such as may be required by the exigencies of war.
Id. (emphasis added) (citations omitted).
These sentiments were reiterated in Waller v. Georgia, 467 U.S. 39, 44-48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), in which the Court held that closure of a pretrial suppression hearing violated a defendant's Sixth Amendment right. The Court said:
The central aim of a criminal proceeding must be to try the accused fairly, and "[o]ur cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant."
"`"The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions...."'"
In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury.
*273 Id. at 46, 104 S.Ct. 2210 (footnote and citations omitted) (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 380, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)).
These values are no less pressing in a violation of probation proceeding than in the criminal prosecution that precedes it. The defendant's liberty is at stake, and the prosecutor must prove a violation of the conditions of the probationer's release. The judge must pass sentence and, in doing so, may consider the same sentencing factors which would apply to the initial sentence. Indeed, it is not uncommon for a defendant to receive probation rather than prison time for an offense, a violation of which could lead to a sentencing proceeding where the defendant could receive substantial prison time. Surely, these proceedings are as important to the defendant's liberty as is the criminal prosecution, and the defendant will desire the public presence to assure he/she is being fairly dealt with by the court. Finally, the public itself has a strong interest in observing whether the defendant is being treated fairly in accordance with the nature of the criminal acts.
We have noted that the public's right to be informed applied to sentencing proceedings. See Miami Herald Publ'g Co. v. State, 363 So.2d 603, 605 (Fla. 4th DCA 1978). Indeed, the supreme court has gone even further, holding "that all trials, civil and criminal, are public events and there is a strong presumption of public access to these proceedings and their records, subject to certain narrowly defined exceptions." Barron v. Fla. Freedom Newspapers, Inc., 531 So.2d 113, 114 (Fla. 1988). If this right exists as to the public at large, then it follows that it is a right of the defendant as well.
History shows the importance of the right to a public trial, even for probation violations. In 1960, during the civil rights movement, Dr. Martin Luther King, Jr. was arrested along with other demonstrators in a sit-in demonstration in Atlanta. After several days, the charges were dropped and all of the demonstrators were released. However, when King was released, he was rearrested for violating probation in connection with a minor traffic offense, one for which no arrests were usually made.[3] He was tried, sentenced to six months of hard labor, and taken to prison in the middle of the night. Because of the public and political outcry, he was released within three days.[4] Clearly, the right of the public to observe the proceedings helped correct what was a misuse of judicial power.
As the Texas Supreme Court said in Fariss v. Tipps, 463 S.W.2d 176, 179 (Tex.1971), "[i]t is unthinkable that either this court or the Court of Criminal Appeals would hold that a defendant in a revocation proceeding could be denied a `public' trial and be subjected to a private and secret trial over his protest." We agree and hold that a probationer has a constitutional due process right to a public trial in a revocation of probation proceeding.
During the revocation hearing in this case, defense counsel failed to object to the closure of the courtroom. Appellant claims that this failure to object does not constitute a waiver of the right because we *274 held the right to be fundamental in Williams, not requiring an objection to preserve it for review. 736 So.2d at 701. While Williams involved a Sixth Amendment right to public trial, we think the same analysis of whether failure to object constitutes fundamental error applies under a Fifth Amendment due process right to a public trial claim. Williams relied on Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), for the proposition that fundamental error can be found where a "structural" defect in the framework of the trial process exists. However, Johnson did not state that all structural errors are fundamental, allowing an appellate court to review them even absent objection. In fact, with respect to the right to a public trial, the Court had previously held that failure to object to the closing of a courtroom is a waiver of the right to a public trial. See Levine, 362 U.S. at 618-20, 80 S.Ct. 1038. Although Levine considered the issue in the context of a Fifth Amendment due process right, the Court has since cited it in other cases as standing for the general proposition that "failure to object to closing of courtroom is waiver of right to public trial." Peretz v. United States, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). Indeed, in Peretz, the Court held that the presence of an Article III judge during voir dire in a criminal trial may be waived even though the absence of such judge may be deemed a structural defect. See id. at 937, 111 S.Ct. 2661. Thus, not all structural defects amount to fundamental, non-waivable error, and Williams' reliance on Johnson for that proposition is misplaced.
The majority view across the country is that a failure to object to a closure of the trial waives the right to a public trial. See, e.g., Wright v. State, 340 So.2d 74, 79-80 (Ala.1976); People v. Bradford, 14 Cal.4th 1005, 60 Cal.Rptr.2d 225, 929 P.2d 544, 570 (1997); Commonwealth v. Wells, 360 Mass. 846, 274 N.E.2d 452, 453 (1971); People v. Marathon, 97 A.D.2d 650, 469 N.Y.S.2d 178, 179 (N.Y.App.Div.1983); State v. Butterfield, 784 P.2d 153, 157 (Utah 1989). See also H.H. Henry, Exclusion of Public During Criminal Trial, 48 A.L.R.2d 1436, § 10 (1956). Furthermore, in Dixon v. State, 191 So.2d 94, 96 (Fla. 2d DCA 1966), the second district summarily rejected the appellant's claim of a violation of his right to a public trial because no objection was made. Most recently, our supreme court pointed to the lack of objection as a reason why there was no reversible error in the partial closure of a courtroom during voir dire. See Evans v. State, 808 So.2d 92, 105 (Fla.2001).
The Utah Supreme Court's analysis of the issue in Butterfield is particularly enlightening. The court explained:
Various courts have addressed the issue of the effect a failure to object to a closure order has on the defendant's right to a public trial under the sixth amendment and analogous provisions in state constitutions. These courts have taken what can be characterized as three different approaches to resolving this issue. The first finds that the right to a public trial is not waived by a failure to object. See, e.g., State v. Hensley, 75 Ohio St. 255, 266, 79 N.E. 462, 462-64 (1906) (construing state constitution); State v. Marsh, 126 Wash. 142, 145-47, 217 P. 705, 706 (1923) (construing state constitution). The second approach is that the right is waived by silence only if the failure to object represents an
intentional and knowing act by the defendant. See Martineau v. Perrin, 601 F.2d 1196 (1st Cir.1979) (construing sixth amendment). The third approach, the apparent majority view, *275 finds that the right is waived by silence. See, e.g., United States ex rel. Bruno v. Herald [Herold], 408 F.2d 125, 128-29 (2d Cir.) (construing sixth amendment), cert. denied sub nom. Bruno v. Herald [Herold], 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1969) [ (1970)]; Geise v. United States, 265 F.2d 659, 660 (9th Cir.) (construing sixth amendment), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959); People v. Cash, 52 Cal.2d 841, 843, 345 P.2d 462, 465 (1959) (construing state constitution).
Waiver is a doctrine of limitation that defines the area in which the state's interest in finality and procedural regularity outweighs the individual's interest in asserting his or her constitutional rights. See Wagner, Wavering Over the Scope of Waiver: The Burger Court and the Out-of-court Waiver of Fourth, Fifth and Sixth Amendment Rights, 6 J.Crim. Def. 1, 4 (1980) (general discussion of the waiver doctrine in the context of constitutional rights). In each of the above approaches, a judgment is made as to the relative importance of the interests involved. In the first approach, the individual's right is paramount, in the second, some weight is given to the state's interest, and in the third approach, the state's interest is at least equal to the individual's. The base judgment being made is the right's importance. Our determination of the status of the right to a public trial will guide the result here.
It is helpful to compare other rights that have been held to require a personal waiver by the defendant. Among these are the right to trial, which is waived by a plea, see Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); the right to be present at trial, see United States v. Gordon, 829 F.2d 119, 123 (D.C.Cir. 1987); the right to trial by jury, see Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); and the right to an interpreter at trial, see People v. Mata Aguilar, 35 Cal.3d 785, 794-95, 677 P.2d 1198, 1204, 200 Cal.Rptr. 908, 914-15 (1984). A unifying characteristic of these rights appears to be that they are of central importance to the quality of the guilt-determining process and the defendant's ability to participate in that process. See, Tigar, Foreward: Waiver of Constitutional Rights: Disquiet in the Citadel, 84 Harv. L.Rev. 1, 18 (1970) (appropriate focus is on an "assessment of the significance of a procedural right to the proper defense of an accused").
We judge the right to a public trial to be of a different order. Certainly it is important in assuring that abuses by the state are not permitted to be hidden from public view. Our decision in [State v.] Crowley [766 P.2d 1069 (Utah 1989)] recognizes the importance of this interest by not requiring a showing of prejudice when a proper objection is made. On the other hand, the absence of the public in a particular case does not necessarily affect qualitatively the guilt-determining process or the defendant's ability to participate in the process. In fact, the difficulty of identifying any resultant prejudice is one of the reasons for the Crowley rule. Of course, it is possible that in a particular case the wrongful closure of a trial could have an adverse impact and that counsel would have failed to preserve an objection. However, the mere possibility of such an instance does not seem to warrant the imposition of a requirement of a personal waiver of the right to a public trial in all cases.
Butterfield, 784 P.2d at 155-56. We agree with the reasoning in Butterfield.
*276 We therefore recede from Williams to this extent: we hold that failure to object to the closure of a trial constitutes a waiver of the right to a public trial.
Because appellant did not object to the closure of the courtroom during the testimony of the minor victim, the issue was not preserved and we affirm.
GUNTHER, STONE, FARMER, KLEIN, STEVENSON, SHAHOOD, GROSS, TAYLOR, HAZOURI and MAY, JJ., concur.
POLEN, C.J., concurs specially.
POLEN, C.J., concurring specially.
I agree with the result reached today and the necessity to clarify, and thereby recede, from what we said in Williams v. State, 736 So.2d 699 (Fla. 4th DCA 1999). Having participated in the Williams decision, I think now that we might have construed the exchange between defense counsel and the court, regarding the exclusion of Williams's family, was enough to preserve the issue, even though the magic words "I object" were not uttered. Had we so held, we would not have needed to consider whether the closure constituted fundamental, reversible error. Today's decision properly clarifies that silencethe failure to make any verbal response to the closure decisionwaives the objection for appellate review.
NOTES
[1] We deem it of no constitutional significance that the victim's mother and advocate were allowed to stay, as did the court in Whitson v. State, 791 So.2d 544, 546 n. 3 (Fla. 2d DCA 2001).
[2] Morrissey's parole analysis has been extended to probation cases. See Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).
[3] King had originally been given a ticket for being a Georgia resident and having an Alabama license, for which he paid a fine and was placed on probation. The ground for the violation is not known.
[4] The Autobiography of Martin Luther King, Jr. (Clayborne Carson ed., Warner Books 1998). Chapter 15, available at http://www.stanford.edu/group/king/autobiography/chp_15.htm.