971 So.2d 228 (2008)
Steven BEASLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-4165.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Thomas A. Palmer, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Beasley appeals his convictions for six counts of child abuse. The primary issue *229 is whether it was fundamental error to instruct the jury on a theory of child abuse that was not charged in the information. We affirm.
On the child abuse counts,[1] the state charged that Beasley "did intentionally inflict physical or mental injury upon a child . . . in violation of Florida Statute 827.03(1)(a)."
Regarding the child abuse allegations, "S" said that her father, Beasley, used a wooden paddle to spank her and her siblings. Beasley also hit them with a vacuum cleaner tube or a wooden rod. Beasley's beatings caused bruising and bleeding. "S" said her father would sometimes lose control and hit the children on their legs, back, chest, stomach, or head. He also hit "S" on the head with the handle of a knife, causing her to bleed, and on another occasion, held the wooden rod against her neck while she lay on the bed. Beasley also pulled "S"'s hair on several occasions, one time yanking her from one room to another by the hair.
Another child, "K," said Beasley would hit her and her siblings with the vacuum cleaner tube. At various times, she saw her father punch "S" in the chest, pull out a chunk of her hair, and put her in a headlock.
Beasley testified, denying all allegations of abuse.
The trial court instructed the jury on the child abuse counts as follows:
Before you can find the defendant guilty of child abuse the State must prove the following two elements beyond a reasonable doubt. One, that Steven Allen Beasley intentionally inflicted physical or mental injury upon ["S"], or committed an intentional act that could reasonably be expected to result in physical or mental injury to ["S"]. Two, that ["S"] was under the age of 18. . . . Physical injury means death, permanent or temporary disfigurement or impairment of any bodily part.
The trial court similarly instructed as to the counts relating to the other children.
Jury instructions are "subject to the contemporaneous objection rule, and absent an objection at trial, can be raised on appeal only if fundamental error occurred." Reed v. State, 837 So.2d 366, 370 (Fla.2002) (quoting State v. Delva, 575 So.2d 643, 644 (Fla.1991)). Beasley did not object to the disputed instruction.
There are three ways to commit child abuse:
(a) Intentional infliction of physical or mental injury upon a child;
(b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
(c) Active encouragement. . . .
§ 827.03(1), Fla. Stat. The state charged the first type, but the trial court instructed the jury on both the first and second types.
As a rule, "where an offense can be committed in more than one way, the trial court commits fundamental error when it instructs the jury on an alternative theory not charged in the information" and the jury returns a general verdict of guilty without specifying the basis for the conviction. Eaton v. State, 908 So.2d 1164, 1165 (Fla. 1st DCA 2005); see, e.g., Vega v. State, 900 So.2d 572, 573 (Fla. 2d DCA 2004) (finding fundamental error where jury instructed on alternate theory not *230 charged in the information); Braggs v. State, 789 So.2d 1151, 1154 (Fla. 3d DCA 2001) (same).
In Weaver v. State, 916 So.2d 895, 898 (Fla. 2d DCA 2005), the Second District reversed Weaver's conviction for battery on a law enforcement officer because the trial court fundamentally erred in instructing the jury on an uncharged alternate theory of the offense. The Weaver court certified a question asking if jury instructions constitute fundamental error when no evidence was presented or argument made on the uncharged alternate theory of the offense. Id.
The supreme court quashed the Second District's decision reversing Weaver's conviction. See State v. Weaver, 957 So.2d 586 (Fla.2007). The supreme court also disapproved of Vega and the similar Dixon v. State, 823 So.2d 792, 794 (Fla. 2d DCA 2001), to the extent these cases were inconsistent with the holding of Weaver. Id. In Weaver, the jury was instructed, without objection, on both the "intentionally causing bodily harm" theory of battery and the "intentional touching or striking" theory of battery, though the information charged only the latter theory. Id. at 587. The supreme court held: "Because bodily harm was never at issue in Weaver's case, and the State never argued or presented evidence of bodily harm, the trial court's inclusion of the bodily harm element in the jury instructions did not rise to the level of fundamental error." Id. at 589. The high court reasoned that where there was neither evidence of nor argument on the uncharged theory of the offense, it was not impossible to know whether the defendant was convicted of the charged theory of the offense or the uncharged theory. The court concluded, "in such cases, the jury's verdict is based not on elements that were never at issue, but on the elements on which the State actually presented evidence, on which the State based its arguments, and which the defendant contested at trial." Id. The supreme court left intact, however the rule enunciated in Vega that it is fundamental error to instruct the jury on an uncharged alternate theory of an offense when it is impossible to ascertain whether the jury convicted the defendant of the uncharged theory rather than the charged theory. See Sanders v. State, 959 So.2d 1232, 1234 (Fla. 2d DCA 2007).
Here, although the state did refer to both theories in its final argument, it did so only to the limited extent that counsel repeated the instruction as given by the court. The state prosecuted the case only on the theory of intentional infliction of physical and mental injury. And, the defense was that the events did not occur. Thus, there could have been no confusion on the jury's determination of guilt on the alternative theory of child abuse. Because neither the state prosecuted on the alternative theory, nor did the evidence support an alternative theory, the instruction did not rise to the level of fundamental error. See Weaver. We, therefore, conclude that the inclusion of the "reasonably be expected to" language in the instructions did not instruct on a disputed issue in the case, and that counsel's repetition of the instruction did not amount to such argument or presentation of evidence on that element as to constitute fundamental error. Rather, the evidence and the argument in this case were all directed at the intentional infliction of "physical or mental injury."
To constitute fundamental error, a jury instruction omission or misstatement must concern a critical and disputed jury issue in the case. See Williams v. State, 400 So.2d 542, 544 (Fla. 3d DCA 1981). We consider Graves v. State, 704 So.2d 147 (Fla. 1st DCA 1997), instructive. There, Graves was charged with sexual battery by digital penetration. The instruction, however, *231 included the alternative method of committing the offense by a "union." The First District concluded that this erroneous addition to the instruction did not constitute fundamental error, noting:
Moreover, the record in this case makes clear that the assistant state attorney did not try this case on a union theory. Instead, the prosecutor focused only on the evidence of penetration, as to the count of the information alleging information.
Id. at 149.
Here, as the state did not put on pertinent evidence or argument directed at the alternative theory, the inclusion of the alternative language, even combined with the state's repetition in the instruction, did not rise to the level of fundamental error.
Beasley also contends that the trial court erred at the sentencing by closing the courtroom to all but family during testimony by the minor victims. Beasley, however, made no objection to the courtroom being cleared of spectators, and, thus, it appears this issue is not preserved. See Alvarez v. State, 827 So.2d 269, 276 (Fla. 4th DCA 2002) (holding that the failure to object to the closure of a trial constitutes a waiver of the right to a public trial); see also Jones v. State, 883 So.2d 369 (Fla. 3d DCA 2004); Evans v. State, 808 So.2d 92 (Fla.2001) (no fundamental error in closing argument during voir dire; issue not preserved in absence of objection).
We have considered, and reject, Beasley's contention that he preserved the issue by filing a rule 3.800(b)(2) motion to correct sentencing error. In support of his position, he cites Jackson v. State, 952 So.2d 613 (Fla. 2d DCA 2007), rev. granted, 959 So.2d 716 (Fla.2007), in which the victim testified at sentencing when defense counsel was not present. The Second District held this was a denial of counsel and error, but that Jackson's counsel did not raise this issue in a rule 3.800(b)(2) motion. Beasley argues that he, like Jackson, has raised a claim of "constitutional error" his constitutional right to a public sentencing hearingbut that, unlike Jackson, he properly raised the issue in a rule 3.800(b)(2) motion.
We agree, however, with the reasoning in the concurring opinion in Jackson, by Judge Stringer, who disagreed with the majority's assertion that this type of error could have been preserved by means of a rule 3.800(b)(2) motion. The concurring opinion first notes that:
The court commentary to the rule defines "sentencing errors" for purposes of the rule as including "harmful errors in orders entered as a result of the sentencing process" and "errors within the sentence itself". . . . In discussing the use of rule 3.800(b)(2), the supreme court identified various "sentencing errors" that should be preserved by a motion pursuant to rule 3.800(b)(2), including sentences exceeding the statutory maximum, habitualization in violation of the statutory requirements, scoresheet errors affecting the length of sentence, erroneous imposition of minimum mandatory sentences, deviation between the written and oral judgments and sentences, improper departure sentences, and improper imposition of costs. Maddox v. State, 760 So.2d 89, 101-10 (Fla. 2000).
While I do not suggest that the list of sentencing errors identified in Maddox is, or was intended to be, an exhaustive list of every conceivable "sentencing error," each of the types of errors identified in Maddox meets the definition of a "sentencing error" provided in the court commentary to rule 3.800(b)(2) and discussed in its opinion adopting the rule. *232 See Amendments [to Florida Rules of Criminal Procedure 3.111(e) and 3.800 and Florida Rules of Appellate Procedure 9.020(h), 9.140, and 9.600], 761 So.2d [1015] 1019 [(Fla.1999)]. Thus, under my reading of the court commentary to rule 3.800(b)(2) and Maddox, I believe that a "sentencing error" that can be preserved under rule 3.800(b)(2) is an error in the sentence itself-not any error that might conceivably occur during a sentencing hearing.

* * *
I do not believe that by adopting rule 3.800(b)(2) the supreme court intended to give a criminal defendant the right to stand mute in the face of obvious procedural irregularities at a sentencing hearing secure in the knowledge that if he or she is dissatisfied with the resulting sentence, he or she could resurrect objections to those procedural deficiencies in a subsequent 3.800(b)(2) motion.
952 So.2d at 615-16 (emphasis added).
Similarly, here, we conclude that the exclusion of spectators during testimony by minors at sentencing, without objection, did not constitute a "sentencing error" that is preserved by the filing of a motion under rule 3.800(b)(2).
Therefore, the judgment and sentence are affirmed.
STEVENSON and MAY, JJ., concur.
NOTES
[1] There are convictions on three other counts, involving sexual abuse, unrelated to the issue on appeal.